**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

|  |  |
|---|---|
| FLAGSHIP CARPETS LLC, <br><br> *Plaintiff,* <br><br> v. <br><br> SCHOOLGIRL STYLE LLC, <br><br> *Defendant*. | CIVIL ACTION NO. _____ <br><br> COMPLAINT <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Flagship Carpets LLC ("Flagship" or "Plaintiff"), by and through its undersigned counsel, files this Complaint for Damages and Declaratory Judgment against Schoolgirl Style LLC ("Schoolgirl" or "Defendant") and hereby alleges as follows:

## PARTIES

1. Plaintiff is a Georgia limited liability company with its principal place of business located at 734 S. River St., Calhoun, Georgia 30701.

2. Defendant is a Michigan limited liability company with its principal place of business located at 106 Lynn St., Flushing, Michigan 48433.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to

1

28 U.S.C. § 1332(a)(1) because the action is between citizens of different states and the amount in controversy exceeds $75,000.

4. This Court further has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a) because some of Plaintiff's claims arise under the Copyright Act, 17 U.S.C. § 101 et seq.

5. This Court has personal jurisdiction over Defendant due to the nature and quality of its actions toward the state of Georgia. The claims asserted herein arise out of and relate to such actions, and this Court's exercise of personal jurisdiction over Defendant comports with traditional notions of fair play and substantial justice.

6. Defendant purposefully transacted business in this state. Defendant carried on a substantial and ongoing relationship with a Georgia manufacturer. Defendant purposefully entered a contract with a Georgia company that Defendant knew would be performed in Georgia. Defendant also purchased hundreds of products from Plaintiff that were manufactured in Georgia pursuant to the same contract, and resold hundreds of those products directly to consumers in Georgia. This lawsuit arises out of Defendant's purposeful actions in Georgia.

7. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and/or omissions giving rise to this action occurred

within the Northern District of Georgia. Specifically, the parties entered into a contract that was performed in the Northern District of Georgia, and Plaintiff manufactured the products that Defendant purchased and re-sold in the Northern District of Georgia.

**FACTUAL ALLEGATIONS**

**A.    Flagship**

8.    Flagship is a floor-covering manufacturer. Flagship manufactures thousands of different styles of rugs, carpets, turfs, and other floor-coverings and distributes them across the country.

**B.    Schoolgirl**

9.    Schoolgirl designs and sells generic educational decorations and resources, including rugs, borders, bulletin board paper, and various printable classroom décor.

**C.    The Parties' Development and License Agreement**

10.    On January 22, 2021, Flagship and Schoolgirl entered a "Development and License Agreement" (the "Agreement"), attached as Exhibit A.

11.    The Agreement provided Flagship "exclusive rights and license to manufacture and sell [Schoolgirl] Products developed exclusively for Flagship Carpets using the [Schoolgirl] Name." (Ex. A at ¶ 1.)

3

12.    Schoolgirl "license[d] use of the [Schoolgirl] Name to [Flagship], authorizing use of the [Schoolgirl] Name on the Products." (*Id*. at ¶ 2.)

13.    Flagship was "provided completed designs for use in the [Schoolgirl] collection " (*id*. at ¶ 3) and in turn developed those designs into products that were branded with the Schoolgirl name and sold as part of Flagship's Schoolgirl Style collection (the "Products").

14.    To develop each design into a finished product, Flagship converted the mock-up file artwork it was provided, rebuilt and vectorized it, scaled the designs to rug dimensions for printing, adjusted the resolution and color profiles, assigned production colors, cleaned the edges and shaping for printing, and ultimately created a new large format print file that was used to produce the final Products.

15.    In exchange for use of the Schoolgirl name, Flagship was obligated to "report and pay to [Schoolgirl] on a calendar quarterly basis a royalty payment (the "Royalties") calculated on all Net Sales (as defined herein) of the Products during the prior quarter, at the rate of fifteen percent (15%) of Net Sales." (*Id*. at ¶ 6.) The Agreement defines "Net Sales" as "[Flagship]'s actual sale price to customers of the Products, less (i) actual returns and allowances related to the Products, in accordance with standard [Flagship] policies, and (ii) any receipts for charges other than the sale price of the Products, including shipping and handling and sales or use taxes." (*Id*.)

These royalty payments were calculated "based on actual sales prices of Products to Dealers/Customers." (*Id*. at ¶ 5.)

16.    Flagship and Schoolgirl mutually assented to and signed the Agreement. The Agreement was supported by valid consideration and is a binding and enforceable contract.

**D.    Flagship's Ownership Of The Designs**

17.    The Agreement includes a provision that outlines the parties' respective intellectual property rights.

18.    In describing Schoolgirl's intellectual property rights, the Agreement states:

> [Flagship] acknowledges [Schoolgirl]'s exclusive intellectual property rights in the [Schoolgirl] Name. [Flagship] shall not, at any time during or after the Term of this Agreement, dispute or contest such exclusive right and title to the [Schoolgirl] Name. It is understood and agreed that [Flagship]'s license for the [Schoolgirl] Name is solely for the purpose of allowing [Flagship] to market and sell the Products pursuant to the terms of this Agreement, and for no other purpose. [Flagship] shall not use the [Schoolgirl] Name for any purpose without [Schoolgirl]'s prior authorization and approval in each instance.

(Ex. A at ¶ 7(a).)

19.    In describing Flagship's intellectual property rights, the Agreement states:

> Unless otherwise agreed by the Parties in writing, **[Schoolgirl] acknowledges**

> **that [Flagship] shall retain exclusive ownership of all Products developed pursuant to this Agreement, to the extent of all intellectual property rights therein.** [Flagship]'s rights and ownership in the Products shall be exclusive of the [Schoolgirl] Name, which may only be used by [Flagship] in connection with the Products as expressly provided in this Agreement, and during the term of this Agreement. [Schoolgirl] agrees that it shall not, at any time during or after the term of this Agreement, dispute or contest such exclusive right and title of [Flagship] to the Products, independent of the [Schoolgirl] Name.

(Ex. A at ¶ 7(b) (emphasis added).)

20.    Accordingly, under the Agreement, Flagship owns the intellectual property rights to the Products it developed pursuant to the Agreement, which include the designs underlying those Products.

21.    Schoolgirl only retained the intellectual property rights to its name.

22.    Flagship has never contested Schoolgirl's right to the Schoolgirl name, but Schoolgirl recently challenged Flagship's ownership of the Products' designs.

**E.    Schoolgirl's Rug Purchases From Flagship**

23.    Flagship developed and manufactured the Products pursuant to the Agreement and sold them to various wholesale retailers. Schoolgirl received the proper royalty payment on each of these sales.

24.    Shortly after executing the Agreement, Flagship and Schoolgirl entered discussions about Flagship selling some of the Products directly to Schoolgirl so that Schoolgirl could resell them on its own website.

6

25.     On March 14, 2021, Al Greco, Schoolgirl's Chief Operating Officer, emailed Flagship to "check in on selling the rugs on [Schoolgirl]'s site" and see if Schoolgirl "need[ed] to do anything . . . to set up as an official wholesaler." (*See* Flagship Email Chain with Al Greco, dated March 2021, attached as Exhibit B, at 4.)

26.     The next day, Flagship responded and asked Schoolgirl to "fill out the attached form" so that Flagship could "get [Schoolgirl] set up as a vendor." (*Id*. at 3.)

27.     Schoolgirl returned the completed form to Flagship on March 29, 2021. (*Id*. at 2; *see also* Schoolgirl Style Vendor Application, attached as Exhibit C.) Flagship opened Schoolgirl's vendor account the same day and provided Schoolgirl its account number: 100478. (Ex. B. at 1.)

28.     Schoolgirl began submitting purchase orders to Flagship as early as March 26, 2021. (*See* Schoolgirl Order Fulfillment Request, dated March 26, 2021, attached as Exhibit D.)

29.     The parties' course of dealings demonstrates that Schoolgirl would submit its purchase orders for rugs purchased directly on its website via email to order@flagshipcarpets.com. Flagship would fulfill each rug order and ship it to the customer name and address Schoolgirl provided. Flagship sent Schoolgirl an invoice

7

for each purchase order, and Schoolgirl's payment of each invoice was due 30 days after purchase. Flagship also paid all royalties it owed Schoolgirl under the Agreement on the rugs Schoolgirl purchased for resale.

30.    This course of dealings continued for several years and created a repeated and consistent pattern of behavior over time. Schoolgirl accepted the rugs and shipping services Flagship provided and compensated Flagship for its products and services in return, and without objection.

31.    Schoolgirl resold hundreds of the rugs it purchased from Flagship directly to consumers in Georgia. (*See* Summary of Schoolgirl's Georgia Sales, attached as Exhibit E.) Specifically, between 2021 and 2025, Schoolgirl sold 457 rugs from Flagship's Schoolgirl Style Collection to Georgia consumers. (*Id*.)

### F.    Schoolgirl's Failure To Pay Invoices

32.    At times, Schoolgirl was delinquent on some of its payments, even allowing its account to go up to 180 days past due. Flagship worked with Schoolgirl to keep its account open with the good-faith understanding that Schoolgirl would eventually catch-up on its payments in full.

33.    Schoolgirl responded to Flagship's emails about delinquent payments with promises to pay and was able to pay off chunks of its debt in installments with sizeable checks.

34.    Flagship reasonably expected that Schoolgirl would continue to pay the invoices for its rug purchases.

35.    Beginning with its August 27, 2025 purchases, however, Schoolgirl stopped paying its invoices altogether.

36.    Since then, Schoolgirl has failed to pay hundreds of invoices. The outstanding unpaid invoices are documented in Schoolgirl's Account Statement, attached as Exhibit F.

37.    As of April 9, 2026, Schoolgirl owes Flagship an outstanding debt of $213,891.51 on its account.

38.    All of the unpaid invoices are well over 90-days overdue.

39.    Schoolgirl terminated the Agreement on October 17, 2025.

40.    Its termination became effective on January 22, 2026, ending the parties' arrangement whereby Flagship would develop and produce Schoolgirl branded rugs for distribution and sale. But Schoolgirl has still failed to pay the outstanding invoices for the Products it purchased prior to terminating the Agreement.

41.    Flagship now demands payment of Schoolgirl's outstanding debt.

## COUNT I
## BREACH OF CONTRACT

42.    Plaintiff specifically realleges and incorporates by reference each and every preceding paragraph contained in the Complaint as if fully set forth herein.

43.    At all material times, Flagship and Schoolgirl entered into a series of valid, binding, and enforceable contracts governing the production and shipping of rugs.

44.    These contracts were formed through Schoolgirl's repeated requests for services, Flagship's acceptance and performance of those requests, Flagship's issuance of invoices identifying the services performed and applicable payment terms, and Schoolgirl's acceptance and retention of the benefits of those services without objection.

45.    Both parties fully understood and accepted the terms of the contracts, as demonstrated by the parties' repeated transactions and established course of dealings over multiple years.

46.    The terms of the contracts were clear that Schoolgirl was required to pay Flagship for all invoiced services within the time period specified in the invoices.

47.    Schoolgirl materially breached the agreement by failing and refusing

10

to pay Flagship for services rendered, despite demand and the passage of all applicable payment deadlines.

48. The contracts also imposed upon each party an implied covenant of good faith and fair dealing. The implied covenant required Schoolgirl to act honestly, fairly, and in good faith so as not to impair Flagship's rights to receive the benefits of the contracts.

49. Schoolgirl's intentional non-payment of the invoices was done in bad faith and designed to hinder, delay, or prevent Flagship's enjoyment of its contractual rights. Schoolgirl's conduct violated the implied covenant of good faith and fair dealing because it unfairly frustrated the purpose of the contracts and undermined the benefit of the bargain owed to Flagship. Schoolgirl's breach of the implied covenant constitutes a breach of the contracts themselves.

50. As a direct and proximate result of Schoolgirl's breaches, Flagship has suffered damages in the form of unpaid invoices in the principal amount of $213,891.51, not including interest.

51. Flagship is entitled to recover all damages resulting from Schoolgirl's breaches, together with applicable interest, attorneys' fees, and costs.

11

## COUNT II
## UNJUST ENRICHMENT / QUANTUM MERUIT
### (Pled in the Alternative to Count I)

52.     Plaintiff specifically realleges and incorporates by reference each and every preceding paragraph contained in the Complaint as if fully set forth herein.

53.     This Count II is pled in the alternative to Count I. In the event the Court determines that no enforceable contract governs some or all of the transactions at issue, Flagship seeks recovery under principles of unjust enrichment and quantum meruit.

54.     Flagship conferred substantial and direct benefits upon Schoolgirl by fulfilling hundreds of purchase orders for rugs over the course of multiple years.

55.     Schoolgirl knowingly accepted, used, and retained the benefits of these services without objection.

56.     Flagship provided these services with the reasonable expectation of being compensated for the fair value of the services rendered.

57.     Schoolgirl was aware, or reasonably should have been aware, that Flagship expected payment for the services it provided.

58.     Despite accepting and retaining the benefits of Flagship's services, Schoolgirl has failed and refused to pay for those services.

59.     As a result, Schoolgirl has been unjustly enriched at the expense of

Flagship.

60.    Under principles of equity and good conscience, Schoolgirl should not be permitted to retain the benefits of Flagship's services without paying the reasonable value thereof.

61.    The reasonable value of the services provided by Flagship is reflected in the invoices issued to Schoolgirl, totaling no less than $213,891.51 in principal.

62.    Flagship is entitled to recover all damages resulting from Schoolgirl's unjust enrichment, together with applicable interest, attorneys' fees, and costs.

## COUNT III
## DECLARATORY JUDGMENT ON COPYRIGHT OWNERSHIP

63.    Plaintiff specifically realleges and incorporates by reference each and every preceding paragraph contained in the Complaint as if fully set forth herein.

64.    This action is brought pursuant to 28 U.S.C. § 2201, which authorizes courts to declare the rights and legal relations of parties in cases of actual controversy.

65.    Plaintiff is the owner of all rights, title, and interest in and to the copyrights in the designs identified in Exhibit G attached hereto and incorporated herein by reference (collectively, the "Designs").

66.    An actual, present, and justiciable controversy exists between Flagship

and Schoolgirl concerning the ownership of the Products' Designs. Schoolgirl sent Flagship a letter arguing that Schoolgirl owns the intellectual property rights to the Products' Designs.

67.     The parties' Agreement explicitly states that Flagship owns the intellectual property rights to the Products, which includes the underlying Designs. Specifically, the Agreement states that "[u]nless otherwise agreed by the Parties in writing, [Schoolgirl] acknowledges that [Flagship] shall retain exclusive ownership of all Products developed pursuant to this Agreement, to the extent of all intellectual property rights therein. (Ex. A at ¶ 7(b).)

68.     The Agreement further provides that "[Schoolgirl] agrees that it shall not, at any time during or after the term of this Agreement, dispute or contest such exclusive right and title of [Flagship] to the Products, independent of the [Schoolgirl] Name." (*Id.*)

69.     Flagship is the sole and exclusive owner of the Products' Designs under the plain language of the Agreement.

70.     Flagship has at all relevant times claimed ownership of the copyrights in the Designs and has exercised dominion and control over the Designs consistent with such ownership.

71.     Schoolgirl has asserted ownership of the Products' Designs and refused

to acknowledge Flagship's ownership. Schoolgirl's adverse claims create a substantial, immediate, and concrete dispute requiring judicial resolution.

72.     By reason of Schoolgirl's claims and assertions, a real, actual, and justiciable controversy exists between Plaintiff and Defendant regarding the ownership of the copyrights in the Designs.

73.     Flagship has no adequate remedy at law and will suffer irreparable harm if the ownership of the copyrights in the Designs is not judicially determined and confirmed.

74.     Flagship requires a judicial declaration of ownership to protect, enforce, license, and commercially exploit the Products without interference from Schoolgirl.

75.     A declaration of rights will resolve the controversy and clarify the parties' legal relations.

76.     Based on the foregoing, Flagship seeks a declaration that it owns the intellectual property rights to the Products, including the underlying Designs.

## COUNT IV
## DECLARATORY JUDGMENT OF COPYRIGHT NON-INFRINGEMENT
### (Pled in the Alternative to Count III)

77.     Plaintiff specifically realleges and incorporates by reference each and every preceding paragraph contained in the Complaint as if fully set forth herein.

15

78.    This action is brought pursuant to 28 U.S.C. § 2201, which authorizes courts to declare the rights and legal relations of parties in cases of actual controversy. The substantive rights at issue arise under the Copyright Act, 17 U.S.C. § 101 et seq.

79.    An actual and justiciable controversy exists between Flagship and Schoolgirl concerning whether Flagship's Designs infringe any copyright owned or controlled by Schoolgirl within the meaning of 17 U.S.C. § 501.

80.    Schoolgirl has threatened to assert claims of copyright infringement against Flagship based on Flagship's Designs, including its smiley face rug design, creating a reasonable apprehension on the part of Flagship that Schoolgirl will initiate litigation against it.

81.    Schoolgirl's alleged copyrighted works consist entirely, or primarily, of common shapes, symbols, and/or designs that are widely used throughout the classroom rug industry and lack sufficient original creative authorship to qualify as copyrightable subject matter under 17 U.S.C. § 102(a).

82.    Because Schoolgirl's alleged copyrighted works are composed entirely, or in all material respects, of common shapes, symbols, and/or designs, those works do not qualify for copyright protection, including copyright registration.

83.    To the extent that Schoolgirl's alleged copyrighted works express ideas,

16

concepts, or functional elements that can only be expressed in a limited number of ways, such expression merges with the underlying idea and is not protectable under the merger doctrine.

84.     To the extent that Schoolgirl's alleged copyrighted works contain elements that are standard, stock, or common within the genre or subject matter, such elements constitute unprotectable scènes à faire.

85.     When unprotectable elements, including common shapes, symbols, and/or designs, merged expression, and scènes à faire, are properly filtered out from Schoolgirl's alleged copyrighted works, there remains no protectable expression that is substantially similar to Flagship's Designs.

86.     Any similarities between Flagship's Designs and Schoolgirl's works are attributable solely to shared use of unprotectable common elements available to all participants in the market.

87.     Based on the foregoing, Flagship seeks a declaration that its Products' Designs do not infringe, directly or indirectly, any valid and enforceable copyright owned or controlled by Schoolgirl.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff hereby respectfully requests the following relief against Defendant, as follows:

17

(a)    Entry of judgment in favor of Plaintiff and against Defendant on all claims asserted herein;

(b)    A declaratory judgment that Plaintiff is the sole owner of the intellectual property rights to the Products' Designs;

(c)    A declaratory judgment that Plaintiff's Designs do not infringe any valid copyright owned or controlled by Defendant;

(d)    An award of Plaintiff's damages for breach of contract;

(e)    An award of Plaintiff's pre-judgment and post-judgment interest;

(f)    An award of Plaintiff's reasonable attorney's fees and costs; and

(g)    An award of such other and further relief, at law or in equity, as the Court may deem just and equitable.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all claims and issues so triable.

Dated:  April 30, 2026    Respectfully submitted,

          **GREENBERG TRAURIG, LLP**

          */s/ Jake Evans*
          Jake Evans
          Georgia Bar No. 797018
          Terminus 200
          3333 Piedmont Road NE, Suite 2500
          Atlanta, Georgia 30305
          P: (678) 553-2100
          F: (678) 553-2212
          Jake.Evans@gtlaw.com

          *Counsel for Flagship Carpets LLC*